UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF ALABAMA

IN RE:

CHARLES K. BRELAND, JR.,

        ADVERSARY PROCEEDING
        CASE NO. 24-1037-JCO

Plaintiff,

        Removed from the Circuit Court of
        Baldwin County, Alabama
        CV-2024-901226

v.

DAVID E. HUDGENS,
ROBERT M. GALLOWAY, and
GALLOWAY WETTERMARK & RUTENS, LLP,

Defendants.

## MEMORANDUM OPINION AND ORDER

This matter came before the Court on David Hudgens' Motions for Sanctions against Charles K. Breland, Jr. and Attorney Harry B. Still III, Breland's Reply, and the related pleadings. (AP docs. 18, 25, 28, 33, 48, 50).[1] Proper notice of hearing was given, appearances were noted on the record, and an evidentiary hearing was held. Upon consideration of the pleadings, briefs, testimony, exhibits, arguments of counsel, and record, this Court finds that Hudgens' Motions for Sanctions are due to be GRANTED for the reasons below.

---

[1] "AP doc." herein refers to documents filed in this Adversary Proceeding.

1

## Jurisdiction

This Court has jurisdiction to hear this matter pursuant to 28 U.S.C. §§1334 and 157, and the Order of Reference by the District Court dated August 25, 2015. Bankruptcy Courts have jurisdiction to interpret and enforce their own orders. *Travelers Indem. Co. v. Bailey,* 557 U.S. 137, 151, 129 S. Ct. 2195, 2205, 174 L. Ed. 2d 99 (2009). This Court previously retained jurisdiction to: (1) interpret the Plan; (2) decide controversies and disputes arising under or in connection with the Plan; (3) enter any order, process or judgment necessary or appropriate to carry out the provisions of the Plan; and (4) enforce the terms of the Settlement Agreement between the parties. (S.D. Ala., Chapter 11 No. 16-2272, docs. 2287 at 21, 2634 at 31 ¶5).

## Procedural Background and Findings of Fact

Charles K. Breland, Jr. ("Breland") filed a Chapter 11 bankruptcy ("Breland I") on March 9, 2009. (Bankr. S.D. Ala., Case No. 09-11139). Hudgens & Associates LLC and Equity Trust Company as Custodian for the Benefit of David E. Hudgens IRA No. 41458 (the "Hudgens Creditors"), filed claims in the case. (Breland I, ECF Claim Nos. 23, 24, 25). Following negotiations between the parties, the Breland I Chapter 11 Confirmed Plan provided as follows with regard to the Hudgens Creditors:

> Claim No. 24 shall be paid $0.00. Claim Nos. 23 and 25-1 shall be Allowed in the cumulative amount of $2,580,000, of which $1,080,000 shall be paid on the Distribution Date from the Consideration. The $1,500,000 balance, together with interest from the Confirmation Date at the rate of 6% per annum, shall be paid on or before December 31, 2011 in accordance with the terms of terms of a promissory note and mortgage to be agreed upon by the parties. The Debtor shall execute and deliver said promissory note and mortgage to his attorney Robert M. Galloway immediately upon confirmation of the Plan. On the Distribution Date, Mr. Galloway shall record said mortgage in the real property records maintained in the

2

Office of the Judge of Probate of Mobile County, Alabama and shall deliver said promissory note to David E. Hudgens as agent for Hudgens & Associates LLC and Equity Trust Company as Custodian for the benefit of David E. Hudgens IRA No. 41458.

(Breland I, doc. 462-1 at 8).

Breland made the initial payment required by the Breland I Plan but refused to give the Hudgens Creditors security or make subsequent payments. As a result, the Hudgens Creditors sought post-confirmation enforcement of the Breland I Plan provision in the Circuit Court of Mobile County, Alabama and obtained a judgment for $2,189,342.96 on March 24, 2016.[2] Breland then filed another Chapter 11 Bankruptcy on July 8, 2016 ("Breland II"). (Bankr. S.D. Ala. No. 16-2272). After a long, arduous, and contentious process, a mediated Chapter 11 Plan was confirmed on June 6, 2022, allowing for estimation and future disposition of the Hudgens Creditors' Claims (Breland II, doc. 2287). The Plan states in part,

> **Except as otherwise provided in this Plan or the Confirmation order and except to enforce the rights accorded under the terms of this Plan, on or after the Effective Date, all persons who have held, currently hold or may hold a debt, claim or interest satisfied pursuant to the terms of this Plan shall be permanently enjoined from taking any of the following actions on account of any such debt, claim, or interest: (1) commencing or continuing in any manner any action or other proceeding against the Debtor, the Breland Entities and the Debtor's counsel, their successors, owners, shareholders, members or their property; (2) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against the Debtor, the Breland Entities, and Debtor's counsel . . . (3) creating, perfecting or enforcing any lien or encumbrances against the Debtor, the Breland entities, and Debtor's Counsel . . . ; (4) commencing or continuing any action, in any manner, in any place that does not comply with or is inconsistent with the provisions or this Plan or the Confirmation Order. Any person injured by any willful violation of such injunction, after notice . . .of the alleged violation and of a request to cease such violation that is not thereafter immediately ceased, shall recover actual damages, including costs and attorney's fees, and in appropriate circumstance, may recover punitive damages, from the willful violator.**

---

[2] *Equity Trust Company as Custodian for the Benefit of David E. Hudgens IRA No. 41458 and Hudgens & Associates LLC v. Charles K. Breland,* Circuit Court of Mobile County, Alabama Case No. CV-2014-900631. See Breland II, doc. 138 at 3 ¶10.

3

> Notwithstanding anything stated to the contrary . . . the rights of the Hudgens Creditors to collect the balance of their Allowed Claim if any, in the event the assets set apart for them . . . are insufficient shall be excluded from said discharge, satisfaction of claims, and injunction; further except as provides in this Plan, Hudgens Creditors and David Hudgens are entitled to the same injunction and remedies as to Debtor and Breland entities . . .

(*Id.* at 19.)

and

> . . . The Court shall retain jurisdiction of this case:
>
> 7.1 To determine the allowance or disallowance of any the amount, priority, validity and dischargeability of claims and interests.
> 7.2 To interpret the Plan and hear all disputes arising in connection with execution of the Plan
> 7.3 To fix and approve allowances of compensation and other administrative expenses, including, if appropriate, payments to be made in connection with this Plan.
> 7.4 To decide controversies and disputes arising under or in connection with the Plan.
> 7.5. To correct any defect, cure any omission, or reconcile and inconsistency in the Plan, and to modify or amend the Plan.
> 7.6. To enforce all causes of action which may exist on behalf of the Debtor.
> 7.7. To issue any order, process or judgment necessary or appropriate to carry out the provision of the Plan.

(*Id.* at 21.)

Breland and the Hudgens Creditors thereafter entered into a Mediated Settlement Agreement ("Agreement") which included terms for future payment of a negotiated amount to the Hudgens Creditors.[3] The Agreement stated that it "resolved all claims, defenses, objections, and/or disputes between the Movants through the date of execution" and that releases would be executed, "covering all acts and omissions through the date the settlement documents are executed

---

[3] It provided for payments to the Hudgens Creditors in the amount of $3,250,000.00, with $450,000.00 to be paid from the escrowed reserve funds, with the balance of $2,800,000.00 with interest at the rate of 8.5% per annum from August 25, 2023, costs, and attorneys' fees (if any) to be paid by December 31,2024, potential discounts for early payment, and other provisions related to retention of mortgage interests in property and related matters as provided therein. (Doc. 2562, 12-24).

4

Case 24-01037    Doc 61    Filed 04/04/25    Entered 04/04/25 12:50:20    Desc Main
Document      Page 4 of 20

and delivered, whether or not causes of action have accrued on such acts or omissions . . .". (Breland II, doc. 2562 at 20, 24). The November 3, 2023 Order approving the Agreement ("Compromise Order") states that if either party breaches its obligations thereunder, it would be responsible for "all costs incurred by the other party as a result, including reasonable attorneys' fees as determined by the Bankruptcy Court, which will retain jurisdiction to enforce the Agreement." (Breland II, doc. 2634 at 19).

Consistent with the Agreement, a Release was executed by Breland and various related entities, on November 6, 2023, releasing the Hudgens Creditors (including David E. Hudgens) from:

> any and all claims, demands, obligations, liability, actions, causes of actions, suits at law or in equity of whatsoever kind or nature, whether based in tort, contract, warranty, or other theory of recovery, and whether for compensatory or punitive damages, known or unknown, which Releasors have or may have against the Releasees with respect to any act or omission through the date of the execution hereof (the "Causes of Action"), whether or not such Causes of Action have accrued on such actions or omissions and whether or not such Causes of Action are characterized as setoffs, recoupments, permissive counterclaims, compulsory counterclaims, or otherwise . . .

(AP doc. 16-1).

On or about August 28, 2024, Charles K. Breland, Jr. by and through counsel, Attorney Harry B. Still, III, commenced State Court Litigation against Robert M. Galloway, Galloway, Wettermark & Rutens, LLP, and David Hudgens, individually, in the Circuit Court of Baldwin County Alabama.[4] (AP doc. 1-1). The allegations in the Complaint relate to the 2009 Breland I bankruptcy, including Breland's contentions that the Defendants made misrepresentations and conspired to defraud him in obtaining confirmation of the Breland I Plan.[5] *Id.* In addition to listing

---

[4] Circuit Court of Baldwin County, Alabama, Case No. 24-901226.

David Hudgens as a named defendant in the style of the case, referring to him as a co-defendant in the body of the Complaint, and including derogatory personal statements about him, Breland's prayer for relief "demands [a] judgment against Defendants, David Hudgens, Robert M. Galloway, and Galloway, Wetermark & Rutens, LLP *jointly and severally*, for compensatory and punitive damages in an amount in excess of the jurisdictional limits of [the Circuit] Court, plus interest, . . . costs . . . and other, further, and different relief to which Breland may be entitled . . . " (*Id.* at 12).

Hudgens timely removed the State Court Litigation to this Court under 28 U.S.C. §1452(a). The Notice of Removal alleged that this Court has jurisdiction pursuant to 28 U.S.C.§1334 because: (1) the Removed Action arises directly from Breland's bankruptcy case; (2) the Removed Action, defenses to it, and the award of costs, including attorneys' fees, and sanctions against Breland for breach of the Agreement with Hudgens will have an impact on the Breland II bankruptcy estate; and (3) it retained jurisdiction to interpret and enforce the Compromise Order. (AP. doc.1 at 4). Hudgens also filed Motions for Sanctions, including Attorneys' Fees and Costs, against Breland under 11 U.S.C. §105(a) and Attorney Still under Rule 9011 based upon violations of the Settlement Agreement and Release. (AP docs. 18, 24, 25). Breland and his counsel filed a Response and Motion to Remand or Abstain indicating that " . . . Breland intends on amending his Complaint by dismissing his claims against creditor David A. Hudgens . . ." . (AP doc. 13).

A duly noticed evidentiary hearing was held on the Motions for Sanctions. The Debtor, Charles K. Breland Jr., testified that he personally signed the Breland II Plan, the Settlement Agreement, the Release, and the State Court Complaint listing Hudgens as a Defendant. (Hr'g Tr. 2:35-2:36).[6] He also acknowledged that the documents speak for themselves.[7] (*Id.*) Breland stated

---

[6] References to the Hr'g Tr. refer to the recorded transcript of the December 17, 2024 evidentiary hearing conducted by this Court unless otherwise noted.
[7] These documents were admitted into evidence at the hearing as Hudgens' Exhibits, A, C, F, and J respectively.

that, "with the Settlement, [he] didn't think that [they] could sue Hudgens", but he signed the State Court Complaint including Hudgens as a defendant because he was a necessary party. (Hr'g Tr. 2:37:30). Breland stated that he "was not trying to get anything out of Hudgens", despite the plain language of the Complaint, and that he understood that Attorney Still had checked with the State Bar. When asked if he reached out to his former bankruptcy counsel, Attorney Richard Gaal,[8] before filing the State Court Litigation, Breland initially testified that he did not call Attorney Gaal. When questioned further, he subsequently stated, " Mr. Gaal did say that 'we don't need to sue Hudgens . . . and I relayed it to my attorney".[9] (Hr'g. Tr.2:42:36). Breland said that he was not aware of the communications from Hudgens' counsel demanding that he be immediately dismissed from the State Court Litigation, but that when he found out there was a problem, he told them to dismiss Mr. Hudgens, although he could not remember when that was.[10]

As this Court presided over the end of Breland I and all of Breland II, it is familiar with the parties, the protracted disputes between Breland and Hudgens, the facts and circumstances surrounding the Breland II Plan Confirmation, the Settlement Agreement, and the related adversary proceedings.[11] Breland is an experienced businessman and was well-represented by Attorney Richard Gaal throughout the negotiation and resolution of the contentious matters in Breland II. This Court recalls, and the Breland II record reflects, that Breland participated in an

---

[8] This Court recalls and takes judicial notice of the record in Breland II, reflecting that Attorney Gaal represented Breland since 2016 and was integrally involved in the case and the negotiations and confirmation of the Plan, Settlement Agreement and Release.
[9] The Attorney he was referring to was Attorney Still.
[10] Attorney Scott Hunter, additional litigation counsel for Breland, stated that his files reflect that Breland came to his office on October 15, 2024, and they discussed that he, "probably ought to dismiss him, Mr. Hudgens".(Hr'g Tr. 2:49:15).
[11] This Court inherited Breland I upon taking the bench in 2015. Breland II was filed July 8, 2016. The breadth of the Breland II docket speaks for itself, as it now consists of over 2500 ECF docket entries and has given rise to 13 Adversary Proceedings. This Court takes judicial notice of the dockets and content of the documents therein with regard to the timing and status of events and facts not reasonably in dispute. *Fed. R. Evid.* 201.

extensive mediation where the terms of the Plan were negotiated, attended the hearings on Plan confirmation as well as the Motion to Compromise, and agreed to the terms thereof.

This Court finds that much of Breland's testimony contradicts the documents he signed and is simply not credible. Considering the totality of the circumstances, the prior proceedings, and the plain language of the Settlement Agreement, Compromise Order, and Release, Breland knew or should have known that he could not sue Hudgens for, "any . . .and all claims, demands, obligations, liability, actions, causes of actions, suits at law or in equity of whatsoever kind or nature, whether based in tort, contract, warranty, or other theory of recovery, and whether for compensatory or punitive damages, known or unknown, . . . with respect to any act or omission . . ." through the date of the execution of the Release. (AP doc. 16-1).

Breland's litigation counsel, Attorney Harry Bartlett Still, III, ("Attorney Still") also testified at the hearing. His demeanor at times could best be characterized as argumentative, disrespectful, and unprofessional. He stated that: (1) he initially spoke with Attorney Mark Ryan[12] and Breland about suing Hudgens in May 2024 (Hr'g Tr. 2:52); (2) he was aware of the Agreement and read the Release that Breland signed prior to filing the State Court Litigation; and (3) he never reached out to Breland's Bankruptcy Counsel to discuss the import of the Agreement and Release.

This Court recalls and the record reflects that at the prior hearing, Attorney Still stated, "I did see there was a Release, and I called the Alabama State Bar, and I told them what I intended to file, and I got preclearance from Tripp Vickers at the Alabama State Bar. He told me that I was on good footing to file the complaint with the conspiracy charge in it, even though there was a [release]." (Nov. 19, 2024 Hr'g Tr.3:22 ; Hudgens Ex. N. at 27). Attorney Still further testified at the December 17th hearing that he spoke to Tripp Vickers, Ethics Counsel at the Alabama State

---

[12] Although mentioned by Attorney Still, this Court is not familiar with Attorney Mark Ryan.

Bar ("Vickers") before filing the State Court Litigation because Attorney Robert Galloway threatened to sue him and he knew he might have a problem because of the Settlement Agreement. (Hr'g Tr. 3:07). Attorney Still did not remember what documents he sent to Vickers. When asked if he had anything in writing from Vickers to corroborate his purported advice, Attorney Still stated, "if I did, I would have sent it to you."(Hr'g Tr. 3:00:11).[13] He testified that he needed to include Hudgens as a necessary party to the state court tort claim and acknowledged that a judgment could have potentially been entered against Hudgens, "depending on what the jury found . . ." (Hr'g Tr. 2:59:15-24).

Attorney Still acknowledged receipt of the September 6, 2024 Letter from Attorney Irvin Grodsky (demanding that Hudgens be dismissed from the State Court Litigation), a copy of the Notice of Removal on October 3, 2024, and the letter from Attorney Watkins on behalf of Hudgens on October 25, 2024. (Hudgens' Exs. G, H, AP doc. 1). Attorney Still admitted that he could have referenced Hudgens in the Complaint without listing him as a party and that such option was discussed prior to filing, but not done. (Hr'g Tr. 3:08:29). Attorney Still also stated that it did not cross his mind to call Attorney Richard Gaal, who served as Breland's Counsel in Breland II and was involved in the negotiation of the Breland II Plan and the Agreement with Hudgens. Such testimony was inconsistent with Breland's prior statement, that he "relayed" Attorney Gaal's admonition, that he could not sue Hudgens, to Attorney Still. (Hr'g. Tr.2:42:36).

Attorney Edward Burns Harrison Willis ("Attorney Willis") also testified at the hearing. He set forth his qualifications including his: educational background, prior employment as a law clerk, and experience as a practicing attorney who has handled and array of Chapter 11 matters,

---

[13] This Court recalls that at the prior setting on November 19, 2024, it advised Attorney Still that it would give him an opportunity to defend himself and that it wanted to see what he claimed to have obtained from the State Bar Ethic's Counsel. (Hudgens' Ex.N, 36-39).

9

and routinely represents bankruptcy trustees. He estimated that he has reviewed approximately 75-125 fee applications over the course of his career and is familiar with the *Johnson* Factors, which are often employed in this jurisdiction to determine whether fees are reasonable and necessary.[14] In reviewing the billings of Irvin Grodsky, Julie Hudgens Haney, and Jay Watkins as counsel for Hudgens in this matter, Attorney Willis testified that: (1) this was a highly contentious, acrimonious battle; (2) a lot of work was done in a short period of time; (3) there was no duplication; (4) in his opinion the work was reasonable and necessary to protect Hudgens; and (5) it is typical to see a Rule 9011 filed separately because §105 matters are different. The Court is familiar with Attorney Willis as he regularly practices in this jurisdiction and found him credible and qualified to give an opinion on the necessity and reasonableness of attorney's fees. Nevertheless, this Court reminded the parties that it is the final arbiter of the allowance of attorney's fees.

The Parties Joint Stipulation ("Stipulation"), which is incorporated by reference herein, recognizes the authenticity and admissibility of Hudgens' Exhibits A-N, which were introduced at the hearing. (AP doc.46). The Stipulation also states that "[t]he hourly rates set forth for Jason R. Watkins, Julie Hudgens-Haney, and Irvin Grodsky on Hudgens' Exhibits K, L, and M, respectively, are reasonable, provided however, that this stipulation does not include a stipulation as to the necessity or reasonableness of the time entries on said invoices." *Id.* at 4,5.

---

[14] See *Johnson v. Georgia Highway Exp., Inc,*, 488 F.2d 714 (5th Cir. 1974).

10

## ANALYSIS

### Sanctions Are Warranted Against Charles K. Breland, Jr. For Violation of the Compromise Order and Release

Bankruptcy courts have jurisdiction to interpret and enforce their own orders. *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151, 129 S. Ct. 2195, 2205, 174 L. Ed. 2d 99 (2009)(citing *United States v. Spallone*, 399 F.3d 415, 421 (2d Cir.2005) (noting that a court must carry out and enforce an order that is clear and unambiguous on its face). Courts have the inherent authority to control the proceedings before them, which includes the authority to impose reasonable and appropriate sanctions. *Carter v. Wal-Mart Stores E., LP*, No. 22-10174, 2023 WL 309034, at 3 (11th Cir. Jan. 19, 2023) (citing *Martin v. Automobili Lamborghini Exclusive, Inc.,* 307 F.3d 1332, 1335 (11th Cir. 2002). Section 105 of the Bankruptcy Code provides that: "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. §105(a).

The plain language of the Compromise Order and Release prohibits Breland from suing Hudgens for any "claims, demands, obligations, liability, actions, causes of action, suits at law or in equity of whatsoever kind or nature, whether based in tort, contract, warranty, or other theory of recovery, and whether for compensatory or punitive damages, known or unknown, . . . with respect to any act or omission . . ." through the date of execution of the Release. (AP doc. 16-1). Breland acknowledged and expressly agreed to the terms of the Release and affixed his signature thereto; thus, he was well aware that he could not pursue claims against Hudgens arising prior to the date thereof. Yet, he directly violated the terms of the Release when he initiated the State Court Litigation. His blatant disregard for the Compromise Order and Release is evidenced by his personal signature on the State Court Complaint listing Hudgens as a defendant, referring to him

as a co-defendant in the body of the Complaint, including derogatory personal statements about him, and requesting a judgment against him for compensatory and punitive damages. Breland's attempt to veil his non-compliance with Attorney Still's unsubstantiated legal advice from the State Bar Ethic's counsel was disingenuous at best. Breland even admitted on cross-examination that he did not think he could sue Hudgens and acknowledged that his bankruptcy counsel,[15] who had extensive knowledge of the Breland II Plan and Settlement, told him that he could not sue Hudgens. It defies logic as to why anyone, much less an experienced businessman such as Mr. Breland, would ignore such advice and seek out other counsel who was much less versed in the matter.

In sum, Breland's intent to disregard and circumvent the Compromise Order and Release is apparent to this Court because: (1) this is not the first time he has sought to relitigate matters with Hudgens; (2) his deep-seated animosity towards Hudgens has been a common theme throughout the bankruptcy proceedings; (3) the plain language of the Compromise Order and Release precluded any further proliferation of litigation between Breland and Hudgens; and (4) his bankruptcy counsel told him that he could not sue Hudgens. As Breland knew his Bankruptcy Counsel would not assist him with pursuing claims against Hudgens, he engaged a new attorney, less knowledgeable about the prior proceedings, to file the litigation in another forum. Breland's intent to harass Hudgens is also evident from the superfluous derogatory statements set forth in the Complaint.

Thus, the Court concludes that Breland's filing of the State Court Litigation against Hudgens was an attempt to harass Hudgens and continue his long-standing vendetta against Hudgens, in direct violation of the Compromise Order as well as the Release and constitutes bad

---

[15] Attorney Richard Gaal.

faith. Additionally, Breland did not immediately dismiss Hudgens from the State Court action upon demand. Only after the State Court Litigation was removed to this Court, did he indicate in his Response To The Show Cause Order and Motion for Remand or Abstention that he, " *intends* on amending his Complaint by dismissing his claims against creditor David A. Hudgens . . . ". (AP doc. 13).[16] Based on the above, the Court finds that Breland's conduct is sanctionable.

The Compromise Order provides in part that, if either party breaches its obligations thereunder, it would be responsible for " all costs incurred by the other party as a result, including reasonable attorneys' fees as determined by the Bankruptcy Court." (Breland II, doc. 2634 at 19). Additionally, this Court has authority to impose reasonable and appropriate sanctions for violations of court orders. *11 U.S.C.* §105. In determining the reasonableness of attorney fees, courts in this jurisdiction have noted that the factors set forth in *Johnson v. Georgia Highway Exp., Inc.,*[17] may be used to determine "what is a 'reasonable' hourly rate and what number of compensable hours is 'reasonable.' " *In re Home Depot Inc.*, 931 F.3d 1065, 1091 (11th Cir. 2019)(citing *Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008)). These include the: (1) time and labor required; (2) novelty and difficulty of questions; (3) skill requisite to perform legal service properly; (4) preclusion of other employment by attorney due to acceptance of case; (5) customary fee; (6) whether fee is fixed or contingent; (7) time limitations imposed by client or circumstances; (8) amount involved and results obtained; (9) experience, reputation, and ability of attorneys; (10) undesirability of case; (11) nature and length of professional relationship with client; and (12) awards in similar cases. Here, the parties stipulated that the hourly rates for Hudgens' counsel were reasonable. (AP doc.46). Given the nature of this matter and the experience of counsel involved,

---

[16] The Record reflects that the Complaint was never amended.
[17] 488 F.2d 714 (5th Cir. 1974).

this Court agrees. Thus, this Court must only determine what number of compensable hours was reasonable and necessary.

Prior to Removal, Hudgens' counsel demanded his immediate dismissal from the State Court Litigation and warned that failure to do so would necessitate actions to enforce the Agreement and protect Hudgens' interest including request for costs, attorneys' fees, and sanctions. (AP doc. 25-1 at 3). When the dismissal demand was not heeded, the applicable timelines required Hudgens' counsel to take prompt action to protect his interest, including removal to this Court. Given the litigious history between the parties and the blatant disregard for the terms of the Settlement Agreement and Release, zealous representation of Hudgens was warranted absent the filing of an outright dismissal of Hudgens with prejudice. While taking into account Attorney Willis' testimony, opining that Hudgens' counsels' fees were reasonable and necessary, this Court also employs its own knowledge and expertise to make a judgment regarding the appropriateness of requested attorney's fees. *Hancock Whitney Bank v. FLC Living, LLC*, No. CV 1:24-00143-KD-MU, 2024 WL 4518284, at 8 (S.D. Ala. Oct. 17, 2024)(citing *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994). Upon review of Hudgens' counsels' time records, considering the totality of the circumstances, the testimony, and the applicable *Johnson Factors,* this Court finds that the following attorneys' fees and costs were reasonably and necessarily incurred in defending Hudgens in this matter:

1. Attorney Jay Watkins, 46.6 hours at $350.00 per hour ($16,310.00) plus expenses of $1,186.22;

2. Attorney Julie Hudgens Haney 50.4 hours at $250.00 per hour ($12,600.00); and

3. Irvin Grodsky 8.3 hours at $300.00 per hour ($2,490.00).

Thus, this Court finds that sanctions against Breland in the amount of $32,586.22 is warranted to compensate Hudgens for the reasonable and necessary attorney's fees and costs incurred in the defense of this matter.

<u>An Award of Sanctions Against Attorney Harry B. Still, III
Is Appropriate Under Rule 9011</u>

An attorney who signs a legal document certifies that they have read the document, conducted a reasonable inquiry into the facts and the law, are satisfied that the document is well grounded in both, and is acting without any improper motive. *Wadsworth v. Walmart Inc.*, No. 2:23-CV-118-KHR, slip op.(D.Wyo. Feb. 6, 2025)(citing *Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.,* 498 U.S. 533, 542 (1991)). Sanctions are warranted under Federal Rule of Bankruptcy Procedure 9011 when a pleading is: (1) "frivolous, legally unreasonable, or without factual foundation" or (2) " filed in bad faith or for an improper purpose." *Matter of Nicholson*, 579 B.R. 640, 649 (Bankr. S.D. Ga. 2017) (citing *Glatter v. Mroz (In re Mroz)*, 65 F.3d 1567, 1572 (11th Cir. 1995)). Bankruptcy Rule 9011, provides in part,

> (b) Representations to the Court. By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
> (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
> (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.
> (c) Sanctions.

15

> . . . If, after notice and a reasonable opportunity to respond, the court determines that (b) has been violated, the court may, . . . below, impose an appropriate sanction on any the attorney, law firm, or party that committed the violation or are responsible for it.

Courts considering Rule 9011 sanctions have noted that the inquiry into whether a pleading is factually or legally frivolous is twofold. *Id.* The court must first determine whether the party's claim is objectively frivolous and if so, it must then determine whether the person signing the document should have been aware that it was frivolous. *Id.* A pleading is legally frivolous when it has no chance of success, such as where a party asserts a claim that is barred due to a prior order. *In re Edgewood Food Mart*, 664 B.R. 893, 900 (Bankr. N.D. Ga. 2024) (citing *In re Flashcom, Inc.,* 503 B.R. 99, 133 (C.D. Cal. 2013), aff'd, 647 F. App'x 689 (9th Cir. 2016) (imposing Rule 9011 sanctions where the movant "knew or should have known that the motion ... was barred by the law of the case and therefore frivolous"); *In re Lane*, 2018 WL 4210234, at 3–4 (Bankr. W.D. Ky. Sept. 4, 2018), aff'd, 604 B.R. 23 (B.A.P. 6th Cir. 2019) (imposing sanctions for filing a second adversary proceeding on issues that had already been fully litigated, appealed or otherwise waived, as that "amount[ed] to frivolous and/or vexatious litigation tactics that had only an improper purpose and amount to an abuse of the bankruptcy process"); *Tipp v. JPMC Specialty Mortg., LLC*, 2022 WL 423401, at 9 (S.D. Ala. Jan. 3, 2022), aff'd sub nom. 2023 WL 8369968 (11th Cir. Dec. 4, 2023) ("repackaging [and repeating] grievances addressed in prior cases is not legally tenable," and finding a sufficient basis to impose Rule 9011 sanctions); *Grappell v. Carvalho*, 2021 WL 5178750, at (S.D. Fla. Nov. 8, 2021) (imposing sanctions because, had plaintiff "conducted a reasonable inquiry into her claims, she would have known they were frivolous," where, "despite clear warning by the [defendants] that she [was] relitigating claims that have already been decided against her and affirmed on appeal, Plaintiff elected to proceed")). When a violation is found, the nature of the sanction is within the Court's discretion, shall be in an amount sufficient to deter

16

repetition of such conduct or comparable conduct by others similarly situated, and may also include non-monetary relief. *Fed. R. Bankr. P. 9011(c)(2); In re Edgewood Food Mart*, 664 B.R. 893, 901 (Bankr. N.D. Ga. 2024; *Campbell v. High Tech Rail & Fence, LLC*, 2020 WL 13526696, at 11 (N.D. Ga. Nov. 17, 2020); *In re Muscatell*, 116 B.R. 295, 299 (Bankr. M.D. Fla. 1990).

Here, the State Court Litigation claims against Hudgens are frivolous because they violate the Compromise Order and Release precluding Breland from suing Hudgens for any "claims, demands, obligations, liability, actions, causes of actions, suits at law or in equity of whatsoever kind or nature, whether based in tort, contract, warranty, or other theory of recovery, and whether for compensatory or punitive damages, known or unknown . . . " through the date thereof. (AP doc. 16-1). Attorney Still admitted that he was aware of the Release prior to initiating the State Court Litigation, yet he signed and proceeded to file the Complaint which included Hudgens as a named defendant and requested monetary damages against him. Notwithstanding Attorney Still's contention that Hudgens was a necessary party to an alleged conspiracy involving Co-Defendant, Attorney Robert M Galloway, he failed to articulate any viable legal basis that would allow such claims against Hudgens despite the plain language of the Compromise Order and Release. Thus, this Court finds that Attorney Still's conduct was frivolous, vexatious, and an abuse of process.

Attorney Still's contention that he relied on the advice of Ethic's Counsel at the Alabama State Bar, Tripp Vickers ("Vickers") with regard to the efficacy of the Settlement Agreement and Release, was completely unsubstantiated. Despite this Court's prior advisement that it wanted evidence of the purported advice of the State Bar Ethic's Counsel upon which Attorney Still claimed to have relied, nothing was produced. Attorney Still did not seek to introduce documentary evidence such as an opinion or affidavit and did not subpoena or call any witness from the State Bar on his behalf. Given the lack of any substantiation whatsoever, the Court finds

17

Case 24-01037 Doc 61 Filed 04/04/25 Entered 04/04/25 12:50:20 Desc Main
Document Page 17 of 20

it difficult to believe Attorney Still's bare assertion that Vickers told him that he could sue Hudgens as a named defendant, despite the Compromise Order and Release. To opine as to whether the Breland II Plan, Settlement Agreement, and Release prevented Breland from suing Hudgens, would necessarily require review of extensive documents in Breland II which in this Court's view is not only highly unlikely but also beyond the purview of Ethic's Counsel. The purpose of the Alabama State Bar Ethic's Counsel is to assist members in complying with their ethical obligations under the Alabama Rules of Professional Conduct. That is different than providing substantive legal advice on the actual merits of a matter. It is the role of this Court, not Ethic's Counsel, to interpret and enforce its orders and the Rules of Bankruptcy Procedure, including Rule 9011.[18]

It was evident from Attorney Still's testimony and demeanor that he: (1) failed to exercise due diligence or adequately investigate and assess the matter prior to including Hudgens as a defendant in the State Court Litigation; (2) failed to recognize the limited role of the State Bar Ethic's Counsel and erroneously recalled or misrepresented such purported advice; (3) impudently ignored and violated the plain language of the Settlement Agreement, Compromise Order, and Release; (4) failed to appreciate the gravity of his actions; (5) and neglected to take prompt remedial measures. Considering the plain language of the Release, which Attorney Still admitted that he was aware of prior to filing the State Court Complaint, this Court finds that he knew or should have known that Breland could not pursue such claims against Hudgens and that the litigation was frivolous.

Attorney Still could have easily avoided this debacle in a number of ways including: (1) diligent assessment and adherence to the plain language of the Release; (2) review of the Breland

---

[18] Attorney Still also failed to demonstrate that advice of the Alabama State Bar's Ethic's Counsel in this type scenario, would even be binding on this Court; however, as no evidence of the specifics of any such purported advice was produced, there is no need for this Court to address that potential issue.

II docket entries, including the Compromise Order which is easily accessible on Pacer; and (3) communication with Breland's Bankruptcy counsel, Richard Gaal. At the very least, he could have mitigated the matter by immediately heeding the September 6, 2025 letter from Hudgens' Counsel demanding that Hudgens be dismissed from the litigation. Attorney Still's lack of due diligence and cavalier attitude is evident by his actions (or lack thereof). This Court concludes that Attorney Still failed to make a reasonable inquiry into the matter before initiating the State Court Litigation and that such unjustifiable violation of this Court's Order and the Release is sanctionable. Upon consideration of the totality of the circumstances, this Court finds that a sanctions award in the amount of Five-Thousand Dollars ($5,000.00) against Attorney Still and dismissal of Hudgens from the litigation with prejudice is appropriate and necessary to deter repetition of such conduct and comparable conduct by others similarly situated. Further, Attorney Still is directed to take 3 hours of professionalism Continuing Legal Education within the next 12 months.

## CONCLUSION

For the reasons above, it is hereby ORDERED, ADJUDGED, and DECREED that Hudgens' Motion For Costs, Including Attorneys' Fees and Sanctions against Charles K. Breland Jr. (AP doc. 18) and Hudgens' Motion For Sanctions Pursuant to F.R.B.P. Rule 9011 against Attorney Harry B. Still, III (AP doc. 25) are GRANTED and sanctions are assessed as follows:

1. Sanctions in the amount of $32,586.22 are entered against Charles K. Breland Jr. to compensate David Hudgens for the reasonable and necessary attorneys' fees and costs incurred in defense of this matter.

2. Sanctions in the amount of $5,000.00 are entered against Attorney Harry B. Still, III for violations of Rule 9011 and to deter repetition of such conduct or

19

Case 24-01037    Doc 61    Filed 04/04/25    Entered 04/04/25 12:50:20    Desc Main
Document    Page 19 of 20

comparable conduct by others similarly situated.

3. The sanction awards in paragraphs 1 and 2 above shall be payable to David E. Hudgens and remitted in care of Attorney Jason (Jay) R. Watkins of Silver, Voit, Garrett & Watkins no later than 60 days from the date of this Order.

4. The claims against David Hudgens are DISMISSED WITH PREJUDICE.

5. Attorney Still is directed to attend and submit an affidavit with supporting documentation to this court within the next 12 months evidencing that he has completed 3 hours of continuing legal education on professionalism.

6. This Court retains jurisdiction to enforce the terms of this Order including but not limited to the imposition of additional sanctions in the event of non-compliance.

Dated: April 4, 2025

_____
JERRY OLDSHUE
CHIEF U.S. BANKRUPTCY JUDGE